UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GREGORY A. SLATE**<br>**35 BRYANT STREET, NW**<br>**WASHINGTON, DC 20001**<br><br>*Plaintiff*<br><br>v.<br><br>**DIOP KAMAU (AKA Donald Carlos Jackson)**<br>**9217 HAMPTON GLEN COURT**<br>**TALLAHASSEE, FL 32312**<br><br>and<br><br>**TYRA FERRELL (AKA Tyra Rasmus)**<br>**9217 HAMPTON GLEN COURT**<br>**TALLAHASSEE, FL 32312**<br><br>and<br><br>**TELITHA ENTERTAINMENT CORP.**<br>**(DBA Telitha Inc)**<br>**TYRA FERRELL, REGISTERED AGENT**<br>**9217 HAMPTON GLEN COURT**<br>**TALLAHASSEE, FL 32312**<br><br>*Defendants* | **Civil Action No.** _____ |

**COMPLAINT WITH JURY DEMAND**

INTRODUCTION

1.     This is a complaint for an injunction, damages, and other appropriate relief to stop Defendants from continuing deliberately to terrorize the Plaintiff. Specifically, Plaintiff seeks to enjoin Defendants from relentlessly: posting defamatory material about Plaintiff on Defendants' websites such as "lifesentenceontheinternet.com;" mailing to Plaintiff's neighbors flyers

containing defamatory material next to copyrighted images of Plaintiff; and otherwise using libel, slander, impersonation, and Plaintiff's private copyrighted images to harass him. Over several years and in the face of several court orders, criminal warrants, and contempt orders, Defendants have resumed posting on the internet Plaintiff's private photographs as well as videos defamatory to Plaintiff, as part of a campaign explicitly designed to harm and ruin Plaintiff. Not only did Defendants display these photographs, videos, and defamation online, but they also mailed them to Plaintiff's personal and professional acquaintances, family, and neighbors. Defendants have also obtained confidential portions of Plaintiff's private medical records that they publish on the internet and in mass mailings. Defendant Diop Kamau also impersonates Plaintiff in telephone calls to law enforcement officials, attempting to incite retaliation against Plaintiff.

2.      Plaintiff has previously been awarded temporary injunctions and protective orders against both Defendants Kamau and Ferrell, who are husband and wife, but their persistent escalating harassment campaign against Plaintiff necessitates his now seeking additional civil relief against Defendants.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (copyright), 28 U.S.C. § 1367(a) (supplemental), and 28 U.S.C. § 1332 (diversity).

4.      This Court has personal jurisdiction over Defendants because, among other things, they purposefully directed the unlawful activities towards the District of Columbia by, *inter alia*, mailing defamatory flyers to Plaintiff's neighbors residing in the District of Columbia, they knew or should have reasonably known that these activities would cause harm in District of Columbia, and they did in fact harm Plaintiff in the District of Columbia through these activities.

5. This District is the appropriate venue for resolving this dispute under 28 U.S.C. § 1391(b) because the Defendants committed a substantial part of the acts and occurrences giving rise to Plaintiff's claims in this jurisdiction.

## PARTIES

6. Plaintiff Slate is an Emmy award-winning investigative journalist and former practicing attorney, who maintains his primary place of business in Washington, D.C.

7. Defendant Diop Kamau is an individual. Upon information and belief, he is a citizen of Florida and resides in Tallahassee.

8. Defendant Tyra Ferrell is an individual. Upon information and belief, she is a citizen of Florida and resides in Tallahassee.

9. Defendant Telitha Entertainment Corp. (DBA Telitha Inc) is a Florida corporation with principal offices located in Tallahassee, Florida. It may be served at the address of its registered agent, Tyra Ferrell, at 9217 Hampton Glen Court, Tallahassee, Florida 32312.

## FACTUAL BACKGROUND

10. Defendants are husband and wife who own and operate numerous websites, blogs, and YouTube channels that promote conspiracy theories about and otherwise malign individuals and organizations with whom they have grievances, such as their former attorney, Defendant Kamau's former employer, and his former clients.

11. When Plaintiff was a teenager, he became acquainted with Defendant Kamau via the internet.

12. From August to October 2007, Plaintiff traveled to Chicago on several different occasions to capture footage of police officers drinking excessively at multiple police-sponsored events and bars frequented by officers.

13.     While in Chicago, Plaintiff captured hours of footage showing multiple instances of police misconduct. This misconduct included drunken driving, fighting, drinking while armed, drinking on duty, and drinking and smoking while in uniform.

14.     On March 3, 2008, Plaintiff copyrighted the footage he collected in Chicago as three different works with the U.S. Copyright Office, under the titles "Chicago Bar Surveillance," and "Hidden Camera Footage," "Mike Mette Fundraiser Surveillance Footage," and "UIC - Baseball Game, Bar Party and Road Footage." (the "Chicago Copyrights").

15.     In March 2008, Plaintiff sent emails and letters to Defendant Kamau and individuals at ABC News, with whom Plaintiff shared the footage in the Chicago Copyrights, expressly informing them that no one had an agreement licensing or permitting the use of that copyrighted material.

16.     In and around March 2008, Defendants began creating bizarre websites and internet posts falsely accusing Plaintiff of being, *inter alia*, a sophisticated "computer hacker," and "police informant."

17.     Throughout 2008 and 2009, Defendant Ferrell left voicemail messages for Plaintiff's friends, family, neighbors, and business associates claiming Plaintiff was under "criminal investigation" for posting "inappropriate" photos of Defendant's 8-year-old daughter.[1]

18.     Plaintiff has never taken, let alone posted inappropriate photographs of a child on the internet. No individual, business, or any entity—other than Defendants—has ever made any such a claim against Plaintiff. And in the decade and more since Defendants first made this hideous accusation against Plaintiff, Plaintiff has never been contacted by law enforcement concerning the

---

[1] Defendants also mass mailed, via email and U.S. Mail, letters containing the same false allegation to administration officials at institutions where Plaintiff matriculated, as well as to the employers and co-worker's of Plaintiff's family members.

allegation, and Plaintiff remains unaware of Defendants' having ever been able or willing to produce any "inappropriate" photos, which they claim Plaintiff posted on the internet.

19. In September 2008, ABC News began echoing Kamau's false claims that Plaintiff is a "hacker," by, among other things, sending a letter to Plaintiff's then-attorney, claiming that Plaintiff was under "criminal investigation" because he "hacked" Defendant Kamau's computer and destroyed the only copy of an alleged licensing agreement for the Chicago Copyrights.

20. Plaintiff has never hacked anyone's computer, and nor to Plaintiff's knowledge has any individual, business, or any entity—other than Defendants—ever made such a claim against Plaintiff. And in the decade and more since Defendants first made these absurd allegations against Plaintiff, not once has Plaintiff been contacted by law enforcement in connection with Defendants' allegations of hacking. Similarly, Plaintiff has never been contacted by law enforcement, and to Plaintiff's knowledge, law enforcement has taken no actions, pursuant to additional and subsequent such claims by Defendants.[2]

### *Prior Litigation Involving the Parties*

21. On August 7, 2009, Plaintiff filed, *pro se*, an action requesting an injunction against Defendant Kamau in the District of Columbia Superior Court (the "Superior Court"), Case No. 2009 CA 005749 B (the "Kamau injunction case").

22. On September 16, 2009, Plaintiff filed a civil action against American Broadcasting Companies, Inc. and other defendants in the United States District Court for the

---

[2] Plaintiff is aware that for more than a decade Defendant Kamau has filed numerous police reports with various law enforcement agencies claiming Plaintiff has hacked the computers of banks, law offices, state judiciary websites, and even accessed "email passwords for confidential DNC data, and Democratic National Committee database access codes." Defendants claims to have reported this alleged hacking by Plaintiff to the FBI for more than five years but none of these obviously false and ridiculous reports have been acted on by law enforcement.

District of Columbia, Case No. 09-1761 (the "ABC News case"), which he litigated almost entirely *pro se*.

23. On or about September 18, 2009, the Superior Court awarded Plaintiff a "Preliminary Injunction" against Defendant Kamau in the Kamau injunction case.

24. On June 9, 2010, shortly before Plaintiff was scheduled to appear in the ABC News case, an individual identifying as Kamau posted a photo of Plaintiff's mother to the internet along with the message, "You are going on the stand fat boy and they are on to you. Be careful with your words. I won't be there to help you. I know you are scared. You have made a mess again. When they finish with you, we can talk. I have something for you."

25. On or about August 26, 2010, detectives with the Metropolitan Police Department (hereinafter, "MPD") sought, and the Superior Court issued, a non-extraditable warrant for Defendant Kamau's arrest for contempt of court for violation of the above-described preliminary injunction.

26. After the criminal warrant for Defendant Kamau was issued, Defendant Ferrell purported to take ownership and control of the websites defaming Plaintiff.

27. On October 1, 2010, a private investigator from Indiana, who told police Defendant Kamau sent him, was arrested for assaulting Plaintiff in front of Plaintiff's residence in Washington, DC.

28. On April 13, 2011, Plaintiff, with the assistance of attorneys at the DC Attorney General's Office, sought and received an order from the Superior Court directing that Defendant Ferrell "shall remove all content under her possession, custody, or control relating to Petitioner [Plaintiff] from any and all websites under her control[.]"

29. On May 10, 2011, the District of Columbia Attorney General's Office filed a

motion requesting the Superior Court find Defendant Ferrell in criminal contempt for failing to remove content posted about Plaintiff at more than 40 websites.

30. On October 14, 2011, the Superior Court issued an order finding: "as a fact that the defendant [Ferrell] has failed and refused to obey said order of this Court in that Respondent [Ferrell] has failed to remove website content relating to petitioner [Plaintiff]. Although able so to do, by reason whereof he/she is in contempt of this Court." *See* Exhibit 1.

31. After Defendant Ferrell was found in contempt, she removed her websites containing defamatory material concerning Plaintiff.

32. U.S. Attorney's Office subpoenaed the Plaintiff to testify before a grand jury investigating Defendant Kamau's actions against Plaintiff.

33. On April 13, 2013, in the ABC News Case, Judge Howell granted summary judgment against Plaintiff, finding no infringement on "the basis of equitable estoppel" and detrimental reliance.

34. Judge Howell also dismissed Plaintiff's *pro se* claims for alleged discovery misconduct, finding, *inter alia*, that "the plaintiff has used (and abused) judicial process to harass and discredit Kamau. As detailed in the defendants' brief, since the initiation of this litigation, the plaintiff has moved to hold Kamau in contempt, procured a bench warrant for Kamau's arrest, and served no fewer than five subpoenas on Kamau and Kamau's former employers."

35. Notably absent from the opinion dismissing the ABC News case is even an implied reference to Plaintiff "hacking" any computer to destroy a licensing agreement for the Chicago Copyrights, as was initially alleged by Defendant Kamau, and which was reiterated and reinforced by ABC News before that case commenced.

36. Since the dismissal of the ABC News case, Defendants have weaponized Judge

Howell's opinion, subsequently incorporating its language in complaints and bar grievances lodged by Defendants: against the attorney who represented Defendants in the Superior Court; against attorneys at the DC Attorney General's Office; against the police officers involved in obtaining the warrant against Defendant Kamau; against judges who made rulings adverse to the Defendant; and, against Plaintiff.[3]

37. Defendants have republished, and continue to republish, excerpts of Judge Howell's opinion on various websites and mass mailings as purported support and evidence of Defendants' claims alleging that their own attorney, the DC Attorney General's Office, MPD, and Plaintiff all conspired to "frame" the Defendants.

38. Further, Defendants have used the findings in the ABC News case, and specifically, excerpts of Judge Howell's opinion in the ABC News case, as purported support, in lieu of factual evidence, for their repeated false assertion that Plaintiff is a convicted felon—such false assertions and accompanying use of the ABC News case have been disseminated by Defendants in mass mailings and on the internet.

39. On December 15, 2015, Defendant Kamau filed a bar complaint against Plaintiff, then an attorney licensed in Maryland, claiming, "Attorney Slate began stalking ABC defense counsel and witnesses Attorney Slate was *convicted* of fraud and perjury and witness intimidation by Judge Beryl Howell" [Sic] [*emphasis added*].[4]

40. Defendants also filed a complaint with MPD against Plaintiff's former attorney's husband, a police officer, alleging he was somehow involved in the alleged conspiracy to "frame"

---

[3] Defendants have filed copies of Judge Howell's opinion to support numerous failed lawsuits against Plaintiff, and various other filings which are too numerous to recount here.

[4] Plaintiff was ultimately disbarred as a result of Defendant Kamau's bar complaint after the Maryland Court of Appeals found that Plaintiff's submission of the case number, date of issue, and other details identifying Judge Howell's opinion on his bar application were insufficient and that Plaintiff should have attached a complete copy of Judge Howell's opinion to his initial bar application. *See Attorney Grievance Commission of Maryland v. Slate*, 180 A.3d 134 (March 2, 2018).

Defendants.

## STATEMENT OF FACTS

### *2019 Mass Mailing of Defamatory Flyers with Plaintiff's Copyrighted Photo*

41.     Like most people, throughout Plaintiff's life, he has taken self-portraits or "selfies" while on vacation, traveling, and for various other reasons or no reason at all.

42.     Plaintiff copyrighted some of the photos he has taken of himself with the U.S. Copyright Office, under the title "Self Photos 1999-2016" (the "Self-Portrait Copyright").

43.     Throughout 2019, hundreds of envelopes began arriving addressed to tenants and neighbors of buildings owned by Plaintiff in the District of Columbia and Maryland.

44.     The upper left-hand corner of the envelopes read: "Know Your Neighbor Campaign- Renter Alert Attorney Gregory Slate Google My Name."  *See* Exhibit 2.

45.     Inside the envelopes were flyers with Plaintiff's photo contained in the Self-Portrait Copyright, along with demonstrably false claims about Plaintiff.

46.     One version of the flyer appears to be a copy of a letter Kamau sent law enforcement falsely claiming, "Slate sued ABC news. The case was thrown out of court and Slate was *convicted* of perjury and fraud." [*emphasis added*].

47.     Plaintiff has never been charged with perjury or fraud, much less convicted of any such crime.  Moreover, the opinion dismissing the ABC News Case, which was reached without the benefit of an evidentiary hearing, finds only that Plaintiff's testimony "was likely perjurious, or at the very least intentionally misleading."  Similarly, in the ABC News case, it was alleged only that Plaintiff was "attempting to fraudulently collect evidence" when an email was sent to ABC News requesting a license for the Chicago Footage to which ABC sent a response indicating that ABC "[did] not own the copyright."  There is simply no way that Plaintiff was "convicted of

perjury and fraud" in the ABC News Case, and even the allegations made in that case do not appear to rise to the level of criminality with respect to fraud.[5]

48. Among the many false claims also printed on the flyers are:

> "2. Attorney Slate has been the subject of 15 stalking restraining orders.
> 3. Attorney Slate installs hidden cameras in the bedrooms and bathrooms of renters.
> 4. Attorney Slate uses the Wi-Fi of his renters to gain access to their computers and personal devices." *See* Exhibit 2.

49. Another version of the flyers, which Defendants mailed to Plaintiff's friends, family, neighbors, and tenants, claims, "He was selling meth from the home he was managing as an unlicensed landlord in the District of Columbia."

50. To be clear, there is no factual basis for the claims in Defendants' flyers discussed herein.

### *2020 Publications Falsely Asserting Plaintiff is a Convicted Felon*

51. On May 22, 2020, Defendant Kamau sent a letter to Mayor Muriel Bowser signed "Don Jackson" with "a.k.a. Diop Kamau" printed under the signature.[6]

52. Defendant Kamau's letter to Mayor Bowser asserts a bizarre "cover up" by MPD, the U.S. Attorney's Office, the D.C. Attorney General Office, and D.C. Bar Counsel.

53. Among other things, Defendant Kamau's letter falsely asserts that Plaintiff had been placed "on probation for a felony hit-and-run accident, and he had two prior DUI convictions."

54. Defendant Kamau falsely asserts in his May 22, 2020 letter that, "Mr. Slate was

---

[5] Defendant Kamau asserts in a letter he also published on the internet that, "[a]ccording to Judge Beryl Howell Slate obtained a warrant through fraud with the intention of stopping my testimony as a defense witness for ABC news." *See* https://1drv.ms/b/s!AmVmTZZYomEygqUOhMsVOUUJS_1REQ (last visited Dec. 17, 2020)
[6] Donald Carlos Jackson was the name given to Defendant Kamau at birth. Defendant Kamau legally changed his name to "Diop Kamau" but continues to use both names.

under the care of a psychiatrist for anger management as part of his probation for a felony hit and run, when he began receiving help from the MPD and Ms. Connell."

55. Plaintiff has never been convicted of any felony, so it is impossible that he was ever on "probation for a felony."

### *2020 Publications Falsely Asserting Plaintiff was "Convicted" of Perjury, Fraud, and Witness Intimidation in the ABC News Case and Infringing Plaintiff's Copyrights*

56. On or about October 27, 2020, Defendant Ferrell re-registered the domain "lifesentenceontheinternet.com" ("Ferrell's Website") in the name of "Telitha Inc."[7]

57. Defendant Ferrell re-published Defendant Kamau's May 2020 letter on Ferrell's Website.[8]

58. Defendant Ferrell posted Defendant Kamau's May 2020 letter along with allegations of a new bizarre conspiracy by Plaintiff, the DC Attorney General's Office, the Metropolitan Police Department, and others to "frame" the Defendants, and claims the "DC Office of Bar Counsel covered-up the misconduct to protect the prosecutors."

59. Ferrell's Website references and characterizes the opinion dismissing the ABC News case *ad nauseam* to support Defendants' false allegation that Plaintiff is a convicted felon and that all of Plaintiff's prior legal efforts to end Defendants' persistent harassment was part of a vast conspiracy by judges, prosecutor, police, their own attorney, and Plaintiff.[9]

60. Specifically, Ferrell's Website falsely asserts, "one year after being convicted of

---

[7] Defendant Ferrell filed Articles of Incorporation for Telitha Entertainment Corp identifying herself as its registered agent, secretary, CFO, and CEO with its principal place of business and mailing address at Defendants' shared residential address in Tallahassee. The Florida Department of State, Division of Corporation indicates Telitha Entertainment Corp is inactive as of September 25, 2020.

[8] A copy of Defendant Kamau's defamatory letter to Mayor Bowser is uploaded to Defendant Ferrell's live.com account and displayed on both the Defamatory Websites.

[9] Notably, Defendants persist in making these allegations despite, without success, having filed a copy of Judge Howell's decision in the ABC News case in literally every court matter involving Plaintiff and Defendant, including the Kamua Injunction case and the civil case resulting in Defendant Ferrell being held in contempt.

perjury, fraud, and witness intimidation by a federal court, Gregory Slate was granted a license to practice law in the state of Maryland."[10]

61. Ferrell's Website also falsely claims, "In a legal case where Slate was convicted of perjury Slate told attorneys representing ABC News Corp. that the row house depicted in the photo above was his property in Baltimore, Maryland [Sic]."

62. Defendant Kamau then published a website nearly identical to Defendant Ferrell's Website at his domain "policeabuse.com" (hereinafter, the "Kamau Website").[11]

63. Both Defendant Ferrell's website and Defendant Kamau's website (collectively, the "Infringing Defamatory Websites") assert verbatim the false claim concerning Plaintiff placing hidden cameras in his tenants' bathrooms and publish the same copyrighted personal photograph of Plaintiff printed on the flyers mass-mailed to Plaintiff's neighbors and associates.

64. The Infringing Defamatory Websites repeatedly falsely claim Plaintiff is a felon.

65. Specifically, the Infringing Defamatory Websites falsely claim that Plaintiff was:

   a. "on probation for a felony hit and run with three DUI arrests (2 convictions) when he appeared at the DC AG's DV Unit."
   b. held in the DC jail on "a probation revocation for a felony hit and run conviction in Virginia. [Sic]"
   c. "on probation for a felony hit-and-run accident when he enlisted the support of two prosecutors working in the Attorney General's domestic violence unit, to assist him in his fraud."

66. Defendant Kamau's Website falsely claims Plaintiff "was on probation for a felony hit and run accident, and multiple DUI's […]."

67. The Infringing Defamatory Websites link to another letter from Defendant Kamau,

---

[10] Kamau Website's attempts to leverage Judge Howell's status to buttress similar false claims asserting, "Judge Beryl Howell is one of the most respected judges in the country. Attorney Slate was found guilty of witness intimidation for framing opposing ABC News defense witnesses prior to their testimony." *See* Exhibit 3
[11] The domain "policeabuse.com" is registered to Don Jackson at Defendants' shared residence in Tallahassee, Florida.

including false statements upon false statements in the form of some sort of narrative:

> "Slate was convicted of fraud, perjury, and witness intimidation for litigation misconduct and for the false legal filings submitted by Assistant Attorney General Sarah Connell and Assistant Attorney General Janese Bechtol. According to Judge Beryl Howell Slate used Bechtol and Connell's legal filings to intimidate witnesses.
> […]
> One year after Bechtol's false charges against my wife were dropped Slate was convicted of perjury and other crimes that included using the office of the Atty. General as an instrument in multiple acts of witness intimidation. From the federal court ruling of Judge Beryl Howell[.][Sic]"[12]

68. Plaintiff's personal and private photographs in the Self-Portrait Copyright, including photos of Plaintiff when he was a minor while in a shower stall, are published on the Infringing Defamatory Websites.[13]

69. The Infringing Defamatory Websites republish videos, some that are narrated by Defendant Ferrell while displaying the Plaintiff's Self-Portrait Copyright.[14]

70. The Kamau Website links to and displays videos containing footage from the Chicago Copyright.

71. On December 7, 2020, a law firm representing Plaintiff sent Defendants a letter explicitly notifying Defendants as to their defamatory and infringing conduct and demanding that they cease and desist the same.

72. Defendants persist in their defamation and infringement. Anyone who searches Plaintiff's name on the internet is misled to that Plaintiff has been convicted of various serious felonies and is a prolific computer hacker and otherwise a threat to the community.

---

[12] https://1drv.ms/b/s!AmVmTZZYomEygqUOhMsVOUUJS_1REQ (last visited Dec. 17, 2020).
[13] Other photos of Plaintiff that infringe on his copyrights are hosted through Defendant Ferrell's wordpress.com account.
[14] The videos displaying the copyrighted photos of Plaintiff are hosted through Defendant Kamau's YouTube accounts. Defendant Kamau's YouTube account hosting the infringing videos include, but are not limited to, "Diop Kamau," "Don Jackson," "PCcstaff Main office."

## COUNT ONE
### DEFAMATION AND DEFAMATION *PER SE* FOR FALSELY ASSERTING PLAINTIFF IS A FELON
### (AGAINST DEFENDANT DIOP KAMAU AND TYRA FERRELL)

73. Paragraphs 1-72 are realleged and incorporated by reference as if fully set forth herein.

74. Defendants Kamau and Ferrell intentionally made false and defamatory statements regarding Plaintiff's conduct, and actions, with the intent to harm Plaintiff.

75. Defendants Kamau and Ferrell disseminated their false statements in writing to third parties, including, without limitation, thousands of individuals over the internet.

76. Specifically, Defendant Kamau declared to the Mayor and thousands more on his website that the Plaintiff was on probation and incarcerated "for a felony hit and run conviction in Virginia."

77. While Defendant Ferrell declared to thousands more on her website that the Plaintiff was on probation and incarcerated "for a felony hit and run conviction in Virginia."

78. Further, Ferrell's Website asserts to anyone who searches Plaintiff's name on the internet that "one year after being convicted of perjury, fraud, and witness intimidation by a federal court, Gregory Slate was granted a license to practice law in the state of Maryland."

79. If it were true, the statements implied that such convictions reflect on Plaintiff's character and truthfulness, but they are factually inaccurate statements.

80. The false and defamatory statements published by Defendants Kamau and Ferrell asserting Plaintiff has a "conviction," was on "probation," and was "incarcerated" for a felony have made Plaintiff appear odious, infamous, and ridiculous.

81. The false and defamatory statements published by Defendants Kamau and Ferrell asserting Plaintiff has been "convicted" and "found guilty" of "perjury," "fraud," and "witness intimidation" make Plaintiff appear odious, infamous, and ridiculous.

82. Defendants Kamau and Ferrell intentionally made the statements with the intent to harm Plaintiff.

83. Defendants Kamau and Ferrell's statements regarding a felony conviction is defamation *per se* and actionable as a matter of law irrespective of special harm.

84. Defendants Kamau and Ferrell's statements were intended to injure the Plaintiff in his profession and standing within the community.

85. Damages are presumed as a result of the statements being defamation *per se*.

86. Notwithstanding, but in the alternative, Defendants Kamau and Ferrell's statements caused Plaintiff severe and special harm specifically with respect to his professional reputation within the community and his ability to rent property he owns.

87. Plaintiff has and will suffer severe harm in his ability to procure employment opportunities.

88. Plaintiff is entitled to recover compensatory damages, which are presumed, and damages as a result of the damage to his reputation.

89. In addition, Plaintiff is entitled to recover punitive damages due to the intentional, willful, and reckless actions of Defendants Kamau and Ferrell.

90. Defendant Kamau and Defendant Ferrell, jointly and severally, as alleged in this Complaint, published false and defamatory statements about Plaintiff on the World Wide Web in such a way as to result in such false and defamatory statements being "cached," or preserved or retained on the Web.

91. In this way, the false and defamatory statements about the plaintiff that Defendant Kamau and Defendant Ferrell, jointly and severally, published on the World Wide Web remain accessible to anyone who has access to an Internet search engine.

92. So long as these false and defamatory statements remain cached on the World Wide Web as alleged in this Complaint, Plaintiff has suffered, is suffering, and will suffer irreparable harm to his trade, profession, community standing, reputation and good name, obloquy, hatred, ridicule, and other irreparable harm that cannot be recompensed at law.

93. Plaintiff demands judgment against Defendant Kamau and Defendant Ferrell, jointly and severally, including a mandatory injunction directing Defendant Kamau and Defendant Ferrell, jointly and severally, to take all steps necessary to remove from the World Wide Web and all search engines operating thereon all traces of and links to the false and defamatory statements posted on the Web by Defendants; an award of compensatory and presumed damages in an amount to be determined at trial, but not less than Seventy-Five Thousand Dollars ($75,000.00); punitive damages in an amount to be determined at trial, but believed to exceed Two Million Dollars ($2,000,000.00); his costs in this behalf expended; and such further relief as justice demands.

## COUNT TWO
### COPYRIGHT INFRINGEMENT – SELF-PORTRAIT COPYRIGHT
### (AGAINST ALL DEFENDANTS)

94. Paragraphs 1-93 are realleged and incorporated by reference as if fully set forth herein.

95. Plaintiff is, and at all relevant times has been, the sole owner of the copyrights in certain photographs. Each of these photographs has been properly registered with the United States U.S. Copyright Office, under the title "Self Photos 1999-2016".

96. Under the Copyright Act of 1976 and later law, Plaintiff has certain rights, including the exclusive rights to reproduce and to distribute the photos contained in the Self-Portrait Copyright.

97. Without Plaintiff's permission, Defendants reproduced and distributed the photos in the Self-Portrait Copyright to the public through numerous websites, including, but not limited to, the Defamatory Websites, YouTube, Live.com, WordPress, and Vimeo. In doing so, Defendants infringed Plaintiff's exclusive rights of reproduction and distribution.

98. Some of this infringement took place after the photos in the Self-Portrait Copyright were registered with the Copyright Office.

99. Defendants committed their infringing acts willfully and intentionally, with indifference to Plaintiff's rights.

100. As a result of Defendants' infringement of Plaintiff's copyrights, the Plaintiff is entitled to actual damages and statutory damages under 17 U.S.C. § 504(c). Plaintiff is also entitled to costs and attorney fees under 17 U.S.C. § 505.

101. Defendants' conduct has caused Plaintiff great and irreparable injury that can neither be fully compensated nor measured in money. Defendants' conduct will continue to cause such harm unless it is enjoined by this Court. Plaintiff is thus entitled to injunctive relief prohibiting Defendant from further infringing the Self-Portrait Copyright and ordering Defendants to destroy all copies of the Copyrighted Works under 17 U.S.C. §§ 502 and 503.

### COUNT THREE
### COPYRIGHT INFRINGEMENT – CHICAGO COPYRIGHTS
### (DEFENDANT KAMAU)

102. Paragraphs 1-101 are realleged and incorporated by reference as if fully set forth herein.

103. Plaintiff is, and at all relevant times has been, the owner of the copyrights in certain video footage contained in the Chicago Copyrights. The video footage in the Chicago Copyrights has been properly registered with the United States Copyright Office.

104. Under the Copyright Act of 1976 and later law, Plaintiff has certain rights, including the rights to reproduce and to distribute the video footage in the Chicago Copyrights.

105. Without the Plaintiff's permission, Defendant Kamau reproduced and distributed footage from the Chicago Copyrights to the public through numerous websites, including but not limited to the Kamau Website[15] and YouTube[16].

106. Some of this infringement took place after the footage in the Chicago Copyrights were registered with the Copyright Office.

107. Defendant Kamau committed his infringing acts willfully and intentionally, with indifference to Plaintiff's rights.

108. As a result of Defendants' infringement of Plaintiff's copyrights, the Plaintiff is entitled to actual damages and statutory damages under 17 U.S.C. § 504(c). Plaintiff is also entitled to his costs and attorney fees under 17 U.S.C. § 505.

109. Defendant Kamau's conduct has caused Plaintiff great and irreparable injury that can neither be fully compensated nor measured in money. Defendants' conduct will continue to cause such harm unless it is enjoined by this Court. Plaintiff is thus entitled to injunctive relief prohibiting Defendant from further infringing the Chicago Copyrights and ordering Defendants to destroy all copies of the Chicago Copyrights under 17 U.S.C. §§ 502 and 503.

---

[15] Defendant Kamau published video footage contained in the Chicago Copyright at the URL: https://policeabuse.com/index.php?option=com_content&view=article&id=76
[16] Defendant Kamau published video footage contained in the Chicago Copyright via his YouTube Channel at the url: https://youtu.be/s6ZJFM2FKeQ?list=PLImwnw8R5HNnbF5kDOLxw20SEV294R7cT

**PRAYER FOR RELIEF**

Plaintiff respectfully requests judgment as follows:

    A.    A preliminary and permanent injunction prohibiting Defendants from posting or otherwise publishing material concerning Plaintiff on the Defamatory Websites or elsewhere;

    B.    An order directing Defendant Kamau and Defendant Ferrell, jointly and severally, to take all steps necessary to remove from the World Wide Web and all search engines operating thereon all traces of and links to the false and defamatory statements posted on the Web by Defendants;

    C.    A preliminary and permanent injunction prohibiting Defendants from posting or otherwise using the Copyrighted Works;

    D.    Compensatory damages in an amount to be proven at trial, but at least in excess of $75,000;

    E.    Statutory damages under 17 U.S.C. § 504(c);

    F.    Punitive damages;

    G.    Attorney fees;

    H.    Costs of suit;

    I.    Interest on the sum of the compensatory, statutory, and punitive damages; and,

    J.    Any other relief the Court deems just and proper.

Dated:  December 18, 2020

Respectfully submitted,

By: /s/ *Janakan Thiagarajah*
Janakan Thiagarajah (DC Bar No. 996177)
Bellwether Law, PLLC
2336 Wisconsin Avenue, N.W.
# 32161
Washington, DC 20007
Tel: (202) 596-8434
janakan@bellwetherlaw.com

*Attorney for Plaintiff Gregory A. Slate*