**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GREGORY A. SLATE,<br><br>                    Plaintiff,<br><br>                    v.<br><br>DIOP KAMAU, *et al.*,<br><br>                    Defendants. | Civil Action No. 20-cv-3732 (BAH)<br><br>Chief Judge Beryl A. Howell |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Gregory Slate alleges that defendants Diop Kamau and Tyra Ferrell, as well as defendant Telitha Entertainment Corp., an organization owned and controlled by Ferrell, have defamed him and infringed certain copyrighted materials. Compl. ¶¶ 73–109, ECF No. 1. This lawsuit is the latest front in the parties' long, acrid, and litigious relationship.  Ferrell, who, along with the other defendants, is a resident of Florida, has moved to dismiss the lawsuit against her for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).  Due to plaintiff's failure to demonstrate that personal jurisdiction may be exercised over Ferrell, her motion to dismiss is granted.

## I.        BACKGROUND

Pertinent background underlying the instant lawsuit is described, followed by review of the brief procedural history.

### A.        Factual Background

The parties in this lawsuit have a long and largely acrimonious personal history, some of which is relevant to resolve Ferrell's motion to dismiss.  Prior litigation involving the parties is briefly described first, followed by review of the facts giving rise to the instant lawsuit.

### 1.   *Plaintiff's 2009 Lawsuit Against ABC News, Inc.*

In 2009, plaintiff filed a copyright infringement lawsuit against ABC News and various of its affiliates, based on ABC's alleged "willful and unauthorized use of less than one minute of video footage" that plaintiff had "filmed . . . as part of a hidden-camera investigation in Chicago in the fall of 2007."  *Slate v. Am. Broadcasting Cos., Inc.*, 941 F. Supp. 2d 27, 29 (D.D.C. 2013), *aff'd*, 584 F. App'x 2 (D.C. Cir. 2014) (per curiam).  Plaintiff filmed that hidden-camera footage (the "Chicago Undercover Footage"), for which he subsequently registered a copyright, while working on a project with employees of both ABC and the Police Complaint Center ("PCC"), an organization directed by defendant Kamau.  *See id.*  In a 2013 opinion ("Court's 2013 Opinion"), this Court ultimately granted summary judgment in favor of defendants on plaintiff's copyright infringement claim, reasoning that because ABC had entered into a licensing agreement with PCC for all the video footage filmed by PCC as part of the hidden-camera investigation, and plaintiff had consistently held himself out as an employee of PCC, plaintiff was equitably estopped from asserting copyright infringement against ABC.  *See id.* at 40–46.

Notably, the Court "also f[ound] that there [was] a second, independent basis for dismissal of [plaintiff's lawsuit against ABC] that must be addressed": plaintiff's bad-faith litigation conduct.  *Id.* at 46.  The details of that conduct were thoroughly detailed, *see id.* at 46–51, and need not be repeated here, except to note that, after careful review of the record, the Court determined that plaintiff had fabricated a key piece of documentary evidence, subsequently "attempt[ed] to defend its veracity in signed pleadings," *id.* at 48, and testified in a

deposition that the fabricated evidence was authentic, which testimony "was likely perjurious, or at the very least intentionally misleading," *id.* at 48 n.22.[1]

### 2.   *Recent Events Giving Rise to the Instant Lawsuit*

Several years later, beginning in 2019, "hundreds of envelopes began arriving addressed to tenants and neighbors of buildings owned by Plaintiff in the District of Columbia and Maryland." Compl. ¶ 43. The upper left-hand corner of those envelopes, which were mailed from Florida, read, "Know Your Neighbor Campaign-Renter Alert Gregory Slate Google My Name." *Id.* ¶ 44; *see also id.* Ex. 2, ECF No. 1-2 (reproducing exemplar envelope). The envelopes contained fliers showing reproduced photographs that plaintiff had taken of himself and for which he had registered a copyright, as well as statements about plaintiff that he alleges are "demonstrably false." Compl. ¶ 45. Specifically, plaintiff objects to the flier's statement that after plaintiff "sued ABC [N]ews," the case "was thrown out of court and Slate was *convicted* of perjury and fraud." *Id.* ¶ 46 (internal quotation marks omitted) (emphasis in original). According to plaintiff, he was never "charged with perjury or fraud, much less convicted of any such crime," *id.* ¶ 47, and he notes that the Court's 2013 Opinion found only that plaintiff's representations to the Court had been "likely perjurious, or at the very least intentionally misleading," *id.* (internal quotation marks omitted).

The fliers also claim that plaintiff "has been the subject of 15 stalking restraining orders," "installs hidden cameras in the bedrooms and bathrooms of renters," and "uses the Wi-Fi of his renters to gain access to their computers and personal devices." *Id.* ¶ 48 (internal quotation marks omitted). Finally, a slightly different version of the flier also claims that plaintiff "was

---

[1] Plaintiff subsequently moved for reconsideration of the court's decision to grant summary judgment for ABC and, in the alternative, dismiss the lawsuit, which request was denied. *See Slate v. Am. Broadcasting Cos.*, 12 F. Supp. 3d 30 (D.D.C. 2013).

selling meth from the home he was managing as an unlicensed landlord in the District of Columbia." *Id.* ¶ 49 (internal quotation marks omitted).  Plaintiff denies all these claims.  *See id.* ¶¶ 45, 47, 50.

Then, on May 22, 2020, defendant Kamau allegedly mailed a letter to Muriel Bowser ("the Bowser Letter"), the Mayor of Washington, DC, in which Kamau alleged an elaborate "cover up" scheme executed by the Metropolitan Police Department, the U.S. Attorney's Office, the D.C. Attorney General's Office, and the District of Columbia Bar.  *See id.* ¶¶ 51–52.[2] According to plaintiff, that letter also falsely asserted that plaintiff had been "placed on probation for a felony hit-and-run accident," *id.* ¶ 53 (internal quotation marks omitted), "had two prior DUI convictions," *id.* (internal quotation marks omitted), and "was under the care of a psychiatrist for anger management as part of his probation for a felony hit and run," *id.* ¶ 54 (internal quotation marks omitted).[3]

On approximately October 27, 2020, defendant Ferrell posted the Bowser Letter to her website dedicated to statements about plaintiff, called "lifesentenceontheinternet.com."  *Id.*

---

[2]     The arcane details of the scheme alleged by Kamau are not relevant to the instant lawsuit or to resolution of the pending motion to dismiss.

[3]     Unsurprisingly, at this stage of the litigation plaintiff offers no indication of the evidence on which he will rely to prove that these statements are false.  *See Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) ("To state a cause of action for defamation, plaintiff must allege and prove[,] [*inter alia*,] that the defendant made a false and defamatory statement concerning the plaintiff . . . ." (quoting *Crowley v. N. Am. Telecomms. Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997))).  Plaintiff is familiar to the Court, however, having litigated multiple lawsuits in this District, and the facts underlying such prior litigation may be relevant to the truth or falsity of these allegedly defamatory statements.  In addition to his litigation with ABC News, *see supra* Part I.A.1, in 2013, plaintiff filed an employment discrimination lawsuit against the District of Columbia Public Defender Service ("PDS") and his former PDS supervisor.  *See Slate v. Pub. Defender Serv. for the Dist. of Columbia*, 31 F. Supp. 3d 277 (D.D.C. 2014).  In an opinion granting defendants' motion to dismiss that lawsuit for failure to state a claim, the Court recounted that in May 2009, plaintiff and his supervisor "were involved in a car accident" while plaintiff was driving, and plaintiff then left the scene of the accident.  *Id.* at 286.  "[S]ubsequently, . . . Arlington County issued a felony arrest warrant for the plaintiff for failure to report a hit and run after leaving the scene of the . . . accident without calling the police."  *Id.* at 289.  Plaintiff was then "charged with driving under the influence and felony hit and run," and roughly six months later, "he pleaded guilty in January 26, 2010, to driving under the influence and to misdemeanor hit and run."  *Id.*  Those facts may well be the basis, or at least the partial basis, for these allegedly defamatory statements in the Bowser Letter concerning plaintiff's involvement in a hit-and-run accident and his convictions for driving under the influence.

¶¶ 56–57.  She also allegedly posted to that website claims of a conspiracy by plaintiff, the D.C. Attorney General's Office, MPD, and others "to 'frame' the [d]efendants."  *Id.* ¶ 58.  The website repeatedly references the Court's 2013 Opinion as support for the claim that plaintiff is a convicted felon.  *See id.* ¶¶ 59–61.  Kamau subsequently registered a website of his own, "policeabuse.com," and simply copied all of the content that Ferrell had posted to her "lifesentenceontheinternet" website.  *See id.* ¶ 62.  Both websites also reproduced the content of the fliers that defendants allegedly mailed to plaintiff's neighbors and tenants, *id.* ¶ 63, including plaintiff's copyrighted photographs of himself, *id.* ¶¶ 68–69.

### B.   Procedural Background

On December 7, 2020, plaintiff's counsel sent defendants a cease-and-desist letter demanding that they cease defaming plaintiff, by calling him a convicted felon on their websites and in the fliers they sent to plaintiff's neighbors and tenants, and infringing the copyrighted pictures of plaintiff featured on both the websites and in the fliers.  *See id.* ¶ 71.  After defendants neither took down their websites nor ceased mailing the fliers, *see id.* ¶ 72, plaintiff filed the instant lawsuit on December 18, 2020.  In a three-count Complaint, plaintiff alleges defamation and defamation *per se* (Count One, *id.* ¶¶ 73–93), based on defendants' assertions on their websites and in their fliers that defendant is a convicted felon, *see id.* ¶¶ 76–81, and copyright infringement, based on defendants' unauthorized use of plaintiff's copyrighted photographs of himself (Count Two, *id.* ¶¶ 94–101), and on Kamau's unauthorized use of the Chicago Undercover Footage (Count Three, *id.* ¶¶ 102–109), the same footage that was at issue in plaintiff's 2009 lawsuit against ABC News.  Plaintiff seeks damages, including compensatory, statutory, and punitive damages; an injunction requiring defendants to take down their websites and cease disseminating plaintiff's copyrighted photographs of himself as well as the Chicago Undercover Footage; and costs and attorney's fees.  *See id.* ¶¶ 93, 100–01, 108–09.

On February 10, 2021, defendant Ferrell filed the pending motion to dismiss the lawsuit against her for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), contending that she had no involvement in either sending the fliers to plaintiff's neighbors and tenants or drafting the Bowser Letter.  *See* Def.'s Mot. Dismiss ("Def.'s Mot.") at 1–2, ECF No. 9.[4]  In support of her motion to dismiss, defendant Ferrell has submitted a sworn affidavit attesting that she is a resident of Florida, does not own property in Washington, DC, and does not conduct or solicit business in Washington, DC.  Def.'s Mot., Ex. 1, Aff. of Tyra Ferrell ¶¶ 2–5.  She also states that she "did not author, send, or disseminate any 'flyers' referencing Plaintiff or any conduct by Plaitiff to Plaintiff's tenants and/or neighbors," including "the 'flyers' references in Plaintiff's Complaint," with which she "had no involvement."  *Id.* ¶ 7. Furthermore, she "did not author, send, or disseminate, and was not involved in the mailing of[,] Diop Kamau's letter to Mayor Muriel Bowser which Plaintiff [references] in his Complaint." *Id.* ¶ 8.  Finally, she states that "[t]he website lifesentenceontheinternet.com was registered in Florida," not in Washington, DC, *id.* ¶ 9, and that she "has never personally registered any websites in the District or Columbia" or "owned or controlled any website that was directed to or favored [the] District of Columbia more than any other jurisdiction."  *Id.* ¶ 11.

---

[4]     On the same day that Ferrell filed her motion to dismiss for lack of personal jurisdiction, each defendant also filed a motion to dismiss pursuant to D.C. Code § 16-5502, which provides for special expedited procedures for disposing of lawsuits that the presiding court determines "arise[] from an act in furtherance of the right of advocacy on issues of public interest," D.C. CODE § 16-5502.  *See* Defs.' Special Mots. Dismiss Pursuant to D.C. Code § 16-5502, ECF Nos. 11–13.  Shortly after those motions were filed, the D.C. Circuit reaffirmed that D.C. Code § 16-5502 "does not apply in federal court."  *Tah v. Global Witness Publ'g, Inc.*, 991 F.3d 231, 238–39 (D.C. Cir. 2021). In response to an order to show cause why these motions to dismiss should not be denied, *see* Min. Order (Mar. 25, 2021), these defense motions to dismiss were then withdrawn, *see* Notice of Withdrawal, ECF No. 20.

Ferrell's motion to dismiss has been fully briefed, *see* Def.'s Mot.; Pl.'s Opp'n Def.'s

Mot. Dismiss, ECF No. 14; Def.'s Reply Supp. Mot. Dismiss ("Pl.'s Reply"), ECF No. 15, and is

ripe for resolution.[5]  For the reasons set out below, Ferrell's motion is granted.

## II.   LEGAL STANDARD

"Personal jurisdiction is 'an essential element of the jurisdiction of a district ... court,'

without which the court is 'powerless to proceed to an adjudication.'"  *Jankovic v. Int'l Crisis

Grp.*, 494 F.3d 1080, 1086 (D.C. Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S.

574, 584 (1999)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2)

for lack of personal jurisdiction, the plaintiff must "make a *prima facie* showing of the pertinent

jurisdictional facts." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017)

(quoting *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)). The *prima

facie* showing requires specific factual allegations connecting each defendant to the forum.  *First

Chi. Int'l*, 836 F.2d at 1378.  Mere conclusory statements and bare allegations are

insufficient. *Livnat,* 851 F.3d at 57.  Unlike on a motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6), the court "may consider materials outside the pleadings in deciding

whether to grant a motion to dismiss for lack of jurisdiction."  *Jerome Stevens Pharms., Inc. v.

FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192,

197 (D.C. Cir. 1992)).  Indeed, jurisdictional arguments may be premised on the "pleadings,

bolstered by such affidavits and other written materials as [the parties] can otherwise

obtain." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).  "When deciding personal

jurisdiction without an evidentiary hearing—as here—the 'court must resolve factual disputes in

---

[5]      On August 4, 2021, two days before this Memorandum Opinion and accompanying Order were entered, plaintiff submitted a motion to file an amended complaint, *see* Pl.'s Mot. for Leave to File First Am. Compl., ECF No. 21, which motion was struck for failure to comply with the Court's Standing Order, ECF No. 4, *see* Min. Order (Aug. 6, 2021).

favor of the plaintiff.'" *Livnat*, 851 F.3d at 57 (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209

(D.C. Cir. 2004)).  The Court, however, "'need not accept inferences drawn by plaintiffs if such

inferences are unsupported by the facts.'" *Id.* (quoting *Helmer*, 393 F.3d at 209).

## III.   DISCUSSION

Determining whether personal jurisdiction exists over a given defendant is a "two-part

inquiry." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

First, a statutory basis for personal jurisdiction must be located.  *Forras v. Rauf*, 812 F.3d 1102,

1105–06 (D.C. Cir. 2016).  Second, if a statutory basis is found, the Court must then "determine

whether an exercise of jurisdiction would comport with constitutional limitations." *Id.* at 1106

(citing *GTE New Media Servs., Inc.*, 199 F.3d at 1347).  Federal courts sitting in diversity

jurisdiction look to state statutes in undertaking the first step. FED. R. CIV. P. 4(k)(1)(A)

(explaining that service of legal process "establishes personal jurisdiction over a

defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state

where the district court is located").

The laws of the District of Columbia provide for two types of personal jurisdiction:

general, *see* D.C. CODE § 13-422, and specific, *see id.* § 13-423, but only the latter is at issue in

this case.  *See* Pl.'s Opp'n at 6–7 (relying on § 13-423 in arguing that personal jurisdiction over

defendant Ferrell is appropriate).[6]  That section, the District of Columbia "long-arm" statute,

---

[6]        General jurisdiction may be exercised over a defendant if her "affiliations with the State are so 'continuous and systematic' as to render [her] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  Ordinarily, a court in the place of an individual's domicile may assert general jurisdiction.  *See id.* at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . .").  Thus, under District of Columbia law, "[a] District of Columbia court may exercise personal jurisdiction over a person domiciled in ..., or maintaining his ... principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422.  Specific jurisdiction, on the other hand, may be exercised when the defendant's contacts with the forum gave rise to plaintiff's asserted claim.  *See Goodyear*, 564 U.S. at 919.

describes several circumstances in which personal jurisdiction is proper.  That statute provides, in relevant part, that:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —
>     (1) transacting any business in the District of Columbia;
>     . . .
>     (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>     (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . . .

D.C. CODE § 13-423(a).[7]

Plaintiff contends all three of these provisions apply to confer personal jurisdiction over Ferrell in this Court.  *See* Pl.'s Opp'n at 6.  Each of these subsections—(a)(1), (a)(3), and (a)(4)—is discussed separately below.

### A.      Jurisdiction Pursuant to Subsection (a)(3)

Plaintiff first argues that personal jurisdiction is proper pursuant to D.C. Code § 13-423(a)(3), which applies when a defendant has "caus[ed] tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. CODE § 13-423(a)(3).  This subsection of the long-arm statute "is a precise and intentionally restricted tort section, . . . which stops short of the outer limits of due process, . . . and which confers jurisdiction only over a defendant who *commits an act in the District* which causes an injury in the District." *Forras*, 812 F.3d at 1107 (omissions in original) (emphasis added by *Forras*) (quoting *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986)); *see also McFarlane v.*

---

[7]      The alternative bases for exercising personal jurisdiction set forth by the long-arm statute are inapplicable to the instant case.  *See* Pl.'s Opp'n at 6 (relying only on subsections 13-423(a)(1), (a)(3), and (a)(4)).

*Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996) (noting this subsection's "careful distinction between 'injury' and 'act'").

Plaintiff's theory of jurisdiction pursuant to this subsection is that by mailing the fliers and the Bowser Letter from Florida into the District of Columbia, defendant Ferrell both "commit[ted] an act in the District," *Forras*, 812 F.3d at 1107 (quoting *Moncrief*, 807 F.2d at 221), and injured plaintiff in Washington, DC.  *See* Pl.'s Opp'n at 8.[8]  Even putting aside Ferrell's affidavit that she was not involved in the creation or mailing of either the fliers or the Bowser Letter, and assuming *arguendo* that she did participate in such mailings, plaintiff's contention is easily rejected, since mailing a letter or other material into Washington, DC from outside of the District does not qualify as an "act . . . in the District of Columbia," D.C. CODE § 13-423(a)(3), within the meaning of subsection (a)(3).  *See Moncrief*, 807 F.2d at 218 (holding that "no act occurred within the District of Columbia," such that "section 13-423(a)(3) did not confer jurisdiction over the defendant," when "the libelous article was printed, and the newspapers were mailed, outside of the District of Columbia" (internal quotation marks omitted) (quoting *Moncrief v. Lexington Hearld-Leader Co.*, 631 F. Supp. 772 (D.D.C. 1985)));  *Forras*, 812 F.3d at 1107 ("[P]ublishing defamatory or otherwise tortious statements within the District that were made outside the District falls short of what subsection (a)(3) requires.");  *Hayhurst v. Calabrese*, 782 F. Supp. 643, 644 (D.D.C. 1992) ("Sending a letter into this jurisdiction is not an act sufficient to warrant the exercise of long-arm jurisdiction under 423(a)(3)." (citing *Moncrief,*

---

[8]     Plaintiff rightly does not contend that Ferrell's allegedly defamatory posts on her website qualify as in-District acts for purposes of this subsection, *see* Pl.'s Opp'n at 8–12, as "personal jurisdiction surely cannot be based *solely* on the ability of District residents to access the defendant[']s[] website[]," *GTE New Media Servs. Inc.*, 199 F.3d at 1349.

807 F.2d 217; *Edmond v. United States Postal Service*, 727 F. Supp. 7 (D.D.C. 1989); *National Bank of Washington v. Mallery,* 669 F. Supp. 22 (D.D.C. 1987))).[9]

Accordingly, subsection (a)(3) provides no basis for the Court to exercise personal jurisdiction over Ferrell.

### B.      Jurisdiction Pursuant to Subsection (a)(4)

Plaintiff next contends that personal jurisdiction over Ferrell is proper under subsection (a)(4).  Two requirements must be met for plaintiff successfully to demonstrate personal jurisdiction pursuant to this subsection.  First, he must allege that the defendant "caus[ed] tortious injury *in* the District of Columbia by an act or omission *outside* the District," D.C. CODE § 13-423(a)(4) (emphasis added), hence its occasional nickname, the "act out/impact in" subsection, *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987) (Ginsburg, J.).  Second, "recognizing that allowing for personal jurisdiction any time an act outside of the District caused an injury within the District might open the courthouse doors too wide, Congress insisted that plaintiffs show 'something more' before haling a defendant into this Court."  *Groop Internet*

---

[9]      Plaintiff spills much ink attempting to circumvent Ferrell's affidavit, *see* Pl.'s Opp'n at 7–12, specifically by attempting to allege conspiracy personal jurisdiction, which is "an application of long-arm jurisdiction pursuant to which a defendant's contacts with the forum consist of the defendant's conspiratorial activities," *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  According to plaintiff, personal jurisdiction may be exercised over Ferrell because she engaged in a civil conspiracy with defendant Kamau, who is subject to the Court's personal jurisdiction, to defame plaintiff and infringe his copyrighted materials.  *See* Pl.'s Opp'n at 8–10.  To establish conspiracy personal jurisdiction, plaintiff must "make a prima facie showing of civil conspiracy," namely by showing "'(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.'"  *Second Amendment Found.*, 274 F.3d at 524 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).  "[T]he 'bare allegation' of conspiracy or agency is insufficient to establish personal jurisdiction." *First Chicago Int'l*, 836 F.2d at 1378–79 (quoting *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983)).

     Plaintiff has failed to make the required showing to establish conspiracy personal jurisdiction.  The only evidence he provides of a civil conspiracy is Ferrell's sworn testimony from 2011, in a separate litigation, *see* Def.'s Reply at 2, that she helped Kamau draft material that Kamau posted to his website, "policeabuse.com."  *See* Pl.'s Opp'n at 9.  That Ferrell helped Kamau write blog posts ten years ago falls far short of establishing a *prima facie* case that the two engaged in a conspiracy to defame plaintiff and infringe his copyrights in 2019.  Accordingly, plaintiff has failed to establish that exercising personal jurisdiction over Ferrell pursuant to an alleged conspiracy between her and Kamau is legally sustainable.

*Platform Inc. v. Psychotherapy Action Network*, Civil Action No. 19-1854 (BAH), 2020 WL 353861, at *4 (D.D.C. Jan. 21, 2020) (quoting *Crane*, 813 F.2d at 761).  Specifically, subsection (a)(4) additionally requires that the plaintiff demonstrate that the defendant (1) "regularly does or solicits business" in the District, (2) "engages in any other persistent course of conduct" here, or (3) "derives substantial revenue from goods used or consumed, or services rendered" here.  D.C. CODE § 13-423(a)(4).  These so-called "plus factors" ensure that personal jurisdiction is not exercised over a defendant when the in-District injury "is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum."  *Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 931 (D.C. Cir. 1981) (Ginsburg, J.).  As set out below, although plaintiff has satisfied the first requirement, he has failed the second, as none of the plus factors is met in the instant case.

First, assuming *arguendo* that, contrary to the her affidavit, Ferrell was responsible for the fliers and the Bowser Letter, *see supra* note 8 and accompanying text, those mailings would qualify as the out-of-state act required by subsection (a)(4).  *See Groop Internet Platform Inc.*, 2020 WL 353861, at *5 ("The allegedly defamatory . . . [l]etter was authored and signed by the three individual defendants . . . . while they were in Illinois, constituting the requisite out-of-District act.").  Even putting aside the fliers and the Bowser Letter, Ferrell's alleged defamatory posts on her website also qualify as the necessary out-of-state act.  Of course, the law is well established that "personal jurisdiction surely cannot be based *solely* on the ability of District residents to access the defendants' websites."  *GTE New Media Servs. Inc.*, 199 F.3d at 1349 (emphasis added).  Yet Ferrell's out-of-District publication to her website of defamatory material may nevertheless qualify as the requisite out-of-District act necessary for personal jurisdiction

pursuant to subsection (a)(4), as long as the other requirements of that subsection are also satisfied.

Furthermore, plaintiff has adequately alleged that those supposedly defamatory fliers and website posts have caused him injury in the District of Columbia, as the injury caused by the "tort of [defamation] is generally held to occur wherever the offending material is circulated," *Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 777 (1984). Here, then, the accessibility in Washington, DC of the allegedly defamatory material on Ferrell's website, as well as Ferrell's supposed mailing of the fliers to plaintiff's neighbors suffices to show that plaintiff, who lives and works in the area, has suffered an in-District injury. This conclusion is bolstered by the fact that plaintiff has alleged specific facts identifying this injury, including that "[s]ome of [his] former tenants have seen [Ferrell's] website," Pl.'s Opp'n, Ex. 1, Decl. of Gregory Slate ("Slate Decl.") ¶ 13, ECF No. 14-1, and "[s]everal former and prospective tenants have abandoned their leases with [plaintiff] or refused to do business because they believed the false statements they saw and read at" Ferrell's website, *id.* ¶ 16. Additionally, plaintiff states that "[a]fter weeks of negotiating to purchase real property, the prospective seller paused the negotiation after reading the false statements about [him]" on Ferrell's website, because the seller "did not like the 'optics' of doing business with [plaintiff] because of . . . statements that appear about [him] on" Ferrell's website. *Id.* ¶ 18. Thus, plaintiff has adequately shown both an out-of-District act, namely Ferrell's alleged involvement with the fliers and Bowser Letter, in addition to Ferrell's publication on her website of allegedly false statements about plaintiff, and an in-District injury, namely the damage to plaintiff's reputation and business incurred when his tenants and other business associates saw those allegedly false claims about him, thereby satisfying the first prong of the (a)(4) inquiry.

He fails at the second prong, however, because he has not shown that any of the subsection (a)(4) plus factors are satisfied.  Plaintiff focuses only on the second factor, necessitating that he demonstrate that Ferrell "engages in any other persistent course of conduct . . . in the District of Columbia," D.C. CODE § 13-423(a)(4), and provides an extensive list of Ferrell's behaviors that he argues satisfies this requirement, including, for example, "[i]ntentionally and purposefully injecting herself in the middle of Plaintiff's D.C.-based residential rental business," Pl.'s Opp'n at 14, "[a]ccusing Plaintiff of committing crimes (e.g., fraud, perjury, and witness intimidation in D.C.)", *id.*, and "[o]btaining and publishing copies of emails from the U.S. Attorney's Office in D.C.," *id.* at 15; *see also id.* at 14–15 (listing eighteen other activities whose connections to the District of Columbia are similarly tenuous).  Some of these alleged activities—for instance, "[k]knowingly spreading defamatory statements about Plaintiff, who lives and works in D.C.," *id.* at 14—amount to no more than restatements of the very actions for which plaintiff attempts to hold Ferrell liable in the instant lawsuit.  Plaintiff's attempt to rely, at least in part, on the same acts by Ferrell to satisfy both the out-of-District-act and persistent-course-of-conduct requirements of subsection (a)(4) disregards that the latter, as a plus factor, requires plaintiff to show "something *more*," *Crane*, 814 F.2d at 763 (emphasis added), beyond merely the conduct that is the basis of the lawsuit, before the Court may exercise personal jurisdiction over Ferrell.  *See Steinberg*, 672 F.2d at 941 (noting that subsection (a)(4) "require[es] something more than the in-forum impact at issue in the litigation").

In any event, that defect aside, the connection between Washington, DC and the remaining acts of Ferrell's that plaintiff identifies is exceptionally attenuated.  Merely communicating with individuals in Washington, DC—for example, "[f]iling false reports to the University of the District of Columbia that Plaintiff committed 'academic misconduct,'" or

14

"[c]alling dozens of D.C. residents falsely claiming Plaintiff . . . was under police investigation for distributing inappropriate photos of an eight-year-old girl," Pl.'s Opp'n at 15—does not establish a persistent course of conduct.  *See Tavoulareas v. Comnas,* 720 F.2d 192, 194 (D.C.Cir.1983); *see also Burman v. Phoenix Worldwide Indus., Inc.,* 437 F. Supp. 2d 142, 154 (D.D.C.2006) (holding that approximately 1,326 telephone calls into the District does not constitute "persistent course of conduct"); *Lewy v. S. Poverty L. Ctr.*, 723 F. Supp. 2d 116, 124 (D.D.C. 2010) (similar).  Further, actions such as "[p]ublishing a photograph of a former D.C. Superior Court Judge and current D.C.-based attorney on her website," or "[b]laming the D.C. Attorney General and the D.C. Bar Counsel for the murder of a D.C. woman," Pl.'s Opp'n at 15, plainly have no connection to the District of Columbia except that they happen to affect, or concern, individuals who live or work in Washington, DC.  As such, they do not help establish that Ferrell engaged in a "persistent course of *conduct . . . in the District of Columbia*," D.C. CODE § 13-423(a)(4) (emphasis added).

In fact, the only behavior of Ferrell's identified by plaintiff that arguably occurred in Washington, DC is "[p]hotographing an Assistant D.C. attorney General inside the D.C. Courthouse, and then publishing that photograph on Ferrell's website."  Pl.'s Opp'n at 14. Presumably, for Ferrell to have photographed an attorney inside "the D.C. Courthouse" (plaintiff does not specify which), Ferrell must have been within the District of Columbia.  Indeed, according to plaintiff, the photograph was taken "during a court date at which both . . . Ferrell and [plaintiff] appeared."  Slate Decl. ¶ 24.  When Ferrell allegedly took this photograph is unclear, but even assuming the photograph is recent, a single visit to Washington, DC is plainly inadequate to satisfy the persistent-course-of-conduct requirement of subsection (a)(4).  *See, e.g.*, *Groop Internet Platform Inc.*, 2020 WL 353861, at *8 ("[F]our trips [to Washington, DC] over

twenty years falls far short of coming within the long-arm statute's ambit."); *Lewy*, 723 F. Supp. 2d at 124 ("Occasional travel to the District is also insufficient [under subsection (a)(4)]."); *Urban Inst. v. FINCON Servs.,* 681 F. Supp. 2d 41, 47–48 (D.D.C. 2010) (finding that three business trips to Washington, DC did not qualify as persistent course of conduct); *Burman,* 437 F. Supp. 2d at 153–54 (finding that attendance by defendants' employees at seminars and conferences in Washington, DC was not persistent course of conduct when "there [was] no evidence that these excursions to the District of Columbia are regular in nature"); *see also Parsons v. Mains*, 580 A.2d 1329, 1330 (D.C. 1990) (reasoning that subsection (a)(4) is "more concerned with a continuing contact than with the impact or substance of a single contact").

In sum, then, Ferrell may well have engaged in a persistent course of conduct with respect to informing the public about her views of plaintiff—"but not, as the statute requires, 'a persistent course of conduct *in the District*.'" *Tavoulareas*, 720 F.2d at 194 (emphasis added by *Tavoulareas*) (quoting D.C. CODE § 13-423(a)(4)).  Accordingly, she is not subject to the Court's personal jurisdiction pursuant to subsection (a)(4).

### C.   Jurisdiction Pursuant to Subsection (a)(1)

Finally, plaintiff contends that subsection (a)(1), under which personal jurisdiction is proper when a defendant "transact[s] any business in the District of Columbia," D.C. CODE § 13-423(a)(1), supplies personal jurisdiction over Ferrell.  Although "that provision has been held 'to be coextensive . . . with the Constitution's due process limit,'" *Forras*, 812 F.3d at 1106 (quoting *Crane*, 814 F.2d at 762), "subsection (a)(1) 'still contemplates a connection that [is] []related to the claim in the suit," *id.* (alterations in original) (quoting *Crane*, 814 F.2d at 763).  Thus, for subsection (a)(1) to apply, plaintiff's claim must "either arise[] out of or relate[] to the nonresident defendant's business activity."  *Shoppers Food Warehouse v. Moreno*, 746 A.2d

320, 332 (D.C. 2000).  To satisfy this "nexus" requirement, plaintiff must show a "discernible relationship" between his claim and the business transacted in the District.  *Id.* at 333.

Plaintiff offers a contorted theory of how Ferrell has transacted business within the meaning of subsection (a)(1): he highlights a line in the Bowser Letter asserting that Ferrell had been accused by the D.C. Attorney General of hiring a private investigator to assault plaintiff, *see* Pl.'s Opp'n at 17, and contends that the referenced out-of-district act of hiring a third party to enter Washington, DC qualifies as "transacting business in the District," D.C. CODE § 13-423(a)(1), within the meaning of subsection (a)(1).

Even assuming that the accusation against Ferrell is true, the lone act of hiring, outside the District of Columbia, an individual who subsequently enters the District is insufficient to invoke personal jurisdiction pursuant to subsection (a)(1).  Plainly, since Ferrell allegedly hired the investigator outside of the District of Columbia, she did not conduct that transaction "*in* the District," *id.* (emphasis added); *see also Forras*, 812 F.3d at 1106 (holding that subsection (a)(1) did not supply personal jurisdiction over defendant who "had not even visited the District of Columbia for any purpose" (internal quotation marks omitted)).  To be sure, as plaintiff notes, *see* Pl.'s Opp'n at 17, a defendant's oversight of a third-party agent's *business* activities in the District brings that defendant within the ambit of subsection (a)(1), which applies whenever a defendant "acts directly *or by an agent*" to "transact[] any business in the District," D.C. CODE § 13-423(a)(1) (emphasis added); *see also, e.g.*, *Rundquist v. Vapiano SE*, Civil Action No. 09-2207 (BAH), 2012 WL 5954706, at *8 (D.D.C. Nov. 9, 2012) (cited in Pl.'s Opp'n at 17). That principle is of no help to plaintiff, however, since the record contains no suggestion, and plaintiff does not argue, that, after being hired by Ferrell, the investigator conducted any business on her behalf while he was in Washington DC.

17

More importantly, even assuming *arguendo* that Ferrell's hiring of the investigator outside of Washington, DC somehow constitutes transacting business in the District, the nexus requirement of subsection (a)(1) is not satisfied here. To be clear, the only connection between Ferrell's hiring of the private investigator and the instant lawsuit is that the hiring is *mentioned* in passing in the Bowser Letter, which was one of the bases for plaintiff's defamation claim. In other words, one of the documents that forms the basis for plaintiff's defamation claim alludes to this alleged transaction, but that transaction, or even the investigator's subsequent actions in the District after being hired, in no way forms the basis for either plaintiff's copyright infringement claims, which are based on defendants' alleged dissemination of the Chicago Undercover Footage and his copyrighted photographs of himself, or his defamation claim, which is based on defendants' alleged mailing of the fliers and the Bowser Letter into the District of Columbia. Aside from this passing reference in the Bowser Letter, then, plaintiff's defamation claim is otherwise "unrelated to the act[] forming the [alleged] basis for personal jurisdiction," *Shoppers Food Warehouse*, 746 A.2d at 333 (quoting *Trerotola v. Cotter*, 601 A.2d 60, 64 (D.C. 1991)), namely Ferrell's alleged hiring of the investigator. As such, that alleged hiring cannot fairly be said to "hav[e] a substantial connection with" plaintiff's lawsuit, *Shoppers Food Warehouse*, 746 A.2d at 335 (internal quotation marks omitted), and personal jurisdiction over Ferrell pursuant to subsection (a)(1) is therefore unavailable.[10]

---

[10] Plaintiff also requests that the Court permit him to conduct jurisdictional discovery, to uncover facts that establish that Ferrell has sufficient connections to the District that personal jurisdiction may be exercised over her. *See* Pl.'s Opp'n at 19–20. Jurisdictional discovery is appropriate when a plaintiff has "pointed to links" between defendant and Washington, DC "sufficient at least to permit further inquiry regarding personal jurisdiction," *Crane*, 814 F.2d 758, but it may not be based "on mere conjecture of speculation," *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1093 (D.C. Cir. 2008). As already explained, plaintiff has pointed to *no* meaningful links between Ferrell and the District of Columbia, save for a single undated visit to the District to appear in court. Furthermore, the Court is skeptical that "jurisdictional discovery would help plaintiff discover anything new," *NBC-USA Hous., Inc. v. Donovan*, 741 F. Supp. 2d 55, 60 (D.D.C. 2010), further weighing against the propriety of jurisdictional discovery. Specifically, plaintiff's extensive laundry list of Ferrell's activities with even an attenuated relationship to Washington, DC, *see supra* Part III.B; *see also* Pl.'s Opp'n at 14–15, suggests that he keeps defendants under

## IV.      CONCLUSION

For the foregoing reasons, plaintiff has failed to demonstrate that personal jurisdiction may be exercised over defendant Ferrell pursuant to subsection (a)(1), (a)(3), or (a)(4) of the District of Columbia's long-arm statute.  Ferrell's Motion to Dismiss is therefore granted.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  August 6, 2021

_____
BERYL A. HOWELL
Chief Judge

---

close scrutiny and thus is already acutely aware of Ferrell's every action that has any arguable connection to this jurisdiction.  The prospect that jurisdictional discovery would reveal further connections between Ferrell and Washington, DC, of which plaintiff is not already aware, is therefore remote.  Accordingly, plaintiff's request for jurisdictional discovery is denied.